# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARK ELLIOTT,

        Petitioner,

                                        Case No. 15-10685

        v.                           HON. TERRENCE G. BERG

CARMEN PALMER,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING PETITIONER'S PENDING MOTIONS, (3) DENYING A CERTIFICATE OF APPEALABILITY, AND (4) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Mark Elliott was convicted after a jury trial in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS §750.317, and felonious assault, MICH. COMP. LAWS §750.82. He was sentenced to concurrent terms of 27 to 50 years for the murder conviction and 2 to 4 years for the assault conviction.

The petition raises thirteen claims: (1) the prosecutor suppressed recordings of Petitioner's 911 calls, (2) members of the public were excluded from the jury selection proceedings, (3) Petitioner's confrontation rights were violated by the admission of hearsay, (4) the prosecutor presented false evidence, (5) trial counsel was ineffective for failing to secure the suppressed 911 recordings, (6) the trial court injected into the trial its own theory of the case, (7) a jury note was answered by the trial court outside Petitioner's presence, (8) the trial court failed to put its response

to the jury note in the record, (9) trial counsel was ineffective for failing to preserve the above claims, (10) appellate counsel was ineffective for failing to raise the above claims on direct appeal, (11) there was insufficient evidence presented at trial to instruct the jury on first-degree murder, (12) the trial court erroneously refused the jury's request to review the testimony of four witnesses, and (13) the sentencing guidelines were scored based on inaccurate information.

The Court denies the petition because review of Petitioner's first ten claims is barred by his procedural defaults, and because the state court adjudication of his remaining claims did not involve an unreasonable application of clearly established Supreme Court law. The Court also denies Petitioner's pending motions, denies Petitioner a certificate of appealability, but grants Petitioner permission to proceed on appeal in forma pauperis.

## I.  FACTUAL BACKGROUND

The charges against Petitioner involved a hit-and-run occurring on June 20, 2009, about a block away from the Next Level Bar in downtown Detroit where Sylvester Green was killed and Jimmy Tyner was injured. The incident stemmed from an earlier fight between Petitioner and Green that occurred inside the bar.

 According to the trial testimony of eyewitnesses, Petitioner arrived at the bar with Lynn Nelson and Antoinette Jones-Winn. Petitioner was a photographer and was taking pictures and distributing business cards inside the bar. At some point Petitioner either dropped his glasses or set them on the bar and went to the dance floor. Green handled the glasses, and when Petitioner saw this, words were

exchanged and a fight between the two men ensued. Green got the better of Petitioner, and Green was on top of Petitioner and punching him in the face. Security guards grabbed both men and removed them from the bar. This occurred near 2:00 am.

Green was subsequently allowed back into the bar. Several witnesses noticed Petitioner sitting in his truck in front of the bar. Nelson went outside to talk to Petitioner and advised him the bar was owned by Green's family and that he should leave.

Sometime after 3:00 a.m., Green and Tyner came out of the bar and walked towards a parked bus. Bobbie Sparks was the bus driver. As Green and Tyner were standing outside the bus and talking with Sparks, Petitioner was seen revving his engine, turning the corner, and then hitting both Green and Tyner with his vehicle and striking the bus. Sparks testified that the victims first tried to ask him a question from the closed door of his bus, and then they walked around to his street-side window when they were struck by the truck. Sparks testified that the force of the impact pushed him out of his seat and into the aisle of the bus.

Witnesses saw that Tyner was stuck under the truck as Petitioner drove away. Petitioner eventually struck a curb, freeing Tyner from under his vehicle. Green was lying in the street in front of the bus. Bar patrons Willie Webb and Tniesha Green identified Petitioner as the driver of the truck.

Samuel McCree, who was driving in the area, testified that he saw Petitioner at a traffic light. McCree flashed his lights at Petitioner to signal that Petitioner's

headlights were off. McCree saw Green and Tyner walking on the sidewalk at the same time Petitioner was stopped at the traffic light. McCree thought Green and Tyner were crossing the street in front of a parked bus. McCree saw Petitioner accelerate from the light and strike the bus. McCree stopped to make sure the bus driver was okay and then noticed Green on the ground in front of the bus. McCree called 911.

Petitioner testified in his own defense. He testified that he had been assaulted by Green and Tyner at the bar. Green snatched the glasses from his face, and Tyner tried to take his camera. After the two men assaulted him, he was told to leave the bar.

Petitioner testified that while he waited in his truck about eight people including the victims exited the bar, surrounded his truck, and started to curse at him. Jones-Winn similarly described Petitioner's truck being surrounded and Petitioner's camera being taken from the truck.

Petitioner testified that he called 911 to report the robbery, and he waited as instructed by the 911 operator for police to arrive. While he was waiting, he saw a bus parked in front of him, and then he saw the victims approach his truck. He was afraid that Tyner was armed, so he pulled out of his parking space, sideswiped the bus, and drove away. He turned himself into police six weeks later when he learned he was accused of hitting two people with his truck.

Petitioner introduced 911 call records showing that he did, in fact, call 911 six times, and that he reported an armed robbery. The records documented the time

the calls were made, that they were made from Petitioner's cell phone, and Petitioner's location when he made the calls. Petitioner's final call to 911 was made at 3:09 am. The 911 calls reporting the hit and run came in at 3:16 am.

Based on this evidence, the jury found Petitioner guilty of the lesser offenses of second-degree murder and felonious assault.

Following his convictions and sentences, Petitioner was appointed appellate counsel who filed a claim of appeal in the Michigan Court of Appeals. Petitioner's appellate brief raised what now form his eleventh, twelfth, and thirteenth habeas claims. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Elliott*, No. 301186, 2012 WL 516064 (Mich. Ct. App. Feb. 16, 2012).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same three claims he raised in the Michigan Court of Appeals. Petitioner also added what now form his first, second, fourth, fifth, and ninth habeas claims to his application. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Elliott*, 819 N.W.2d 579 (Mich. 2012) (unpublished table decision).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising what now form his first through tenth habeas claims. The trial court denied the motion for relief from judgment in an opinion and order dated June

3, 2013, finding that Petitioner failed to comply with Michigan Court Rule 6.508(D)(3).

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, but the court denied relief because "defendant allege[d] grounds for relief that could have been raised previously and he had failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and ha[d] not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b)." *People v. Elliott*, No. 317796 (Mich. Ct. App. Order, Jan. 24, 2014).

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but it denied relief citing Rule 6.508(D). *People v. Elliott*, 849 N.W.2d 376 (Mich. 2014) (unpublished table decision).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from

6

[this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## III.   ANALYSIS

### A. Sufficiency of the Evidence

The Court will address Petitioner's preserved claims first. Petitioner's eleventh claim asserts that there was insufficient evidence of premeditation and deliberation to support submitting the first-degree murder charge to the jury. Petitioner asserts that the prosecutor rested its allegation that he acted with premeditation on the untrustworthy testimony that he was seen circling the block for a period of time before hitting the victims with his truck. Petitioner lists a number items presented at trial that undermine the prosecutor's theory with respect to this charge. (Dkt. 1, Brief, at 122-123).

Petitioner was acquitted of first-degree murder, however, and found guilty of the lesser offense of second-degree murder. "[C]learly established Supreme Court law provides that a defendant has a right not to be convicted except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006) (quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis original); *See also Aldrich v. Bock*, 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004). A number of cases have held that the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F. 3d 760, 765, n. 4 (6th Cir. 1996); *Long*, 450 F. Supp. 2d at 752; *Aldrich*,

327 F. Supp. 2d at 761; *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001); *But see Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D. Mich. 2002) (finding this claim cognizable).

In light of the fact that Petitioner was acquitted of the first-degree premeditated murder charge and only found guilty of the lesser included offense of second-degree murder, any error in submitting the first-degree premeditated murder charge to the jury would not entitle petitioner to habeas relief because such a claim cannot be based on clearly established Supreme Court law. *See King v. Trippett*, 27 Fed. Appx. 506, 510 (6th Cir. 2001) (petitioner who alleged that the trial court improperly refused to enter a directed verdict on his armed robbery charge, even though the jury subsequently acquitted him on that charge, failed to state a claim sufficient for habeas corpus relief).

Moreover, contrary to Petitioner's arguments, there was sufficient evidence of premeditation and deliberation to support submitting the first-degree murder charge to the jurors. "The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."

Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

To constitute first-degree murder in Michigan, the prosecution must establish that a defendant's intentional killing of another was deliberate and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F. Supp. 2d at 596) (citing *People v. Anderson*, 209 Mich. App. 527, 537 (1995)).

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 2d at 594-95 (quoting *People v. Vail*, 393 Mich. 460, 469 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).

Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson*, 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470 (1975)). Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers*, 161 F. 3d 370, 389 (6th Cir. 1998).

As the Michigan Court of Appeals noted in rejecting Petitioner's claim, there was sufficient evidence of premeditation and deliberation to support submitting the first-degree murder charge to the jurors. Even if one accepts Petitioner's arguments and discounts the allegedly biased witnesses' testimony, and even if one further assumes that Petitioner stayed at the scene because he was directed to do so by the 911 operator, there was still sufficient evidence presented to sustain a first-degree murder charge. One need only look to the testimony of Bobbie Sparks and Samuel McCree, both unrelated to the victims. McCree saw Petitioner creeping forward on Brush Street in his truck very slowly with his headlights off. (Dkt. 5-12, at 156). McCree saw the two victims next to a city bus on Larned Street, standing on the street side of the bus. (*Id.* at 157). Petitioner then "took-off," made a right turn onto Larned, and hit the bus. (*Id.* at 139). Sparks, the bus driver, similarly testified that the victims just approached the street-side of the bus after asking him for directions from the sidewalk side. (Dkt. 5-11, at 136-37). One of the two men tapped on his window, presumably to ask another question, when both men were hit by Petitioner's truck. (*Id.*)

11

Viewing these two witnesses' testimony alone in a light most favorable to the prosecution would allow a rational fact-finder to conclude beyond a reasonable doubt that Petitioner acted with premeditation and deliberation.

Petitioner's argument that the prosecutor theorized that Petitioner planned to attack the victims for a longer period of time is beside the point. One can even concede that Petitioner called 911 and was waiting for police as instructed. The evidence nevertheless allowed for a finding beyond a reasonable doubt that despite whatever peaceful intention Petitioner may have possessed earlier, he changed his mind and, with premeditation and deliberation, drove his truck directly into the victims when the opportunity presented itself.

For these reasons, clearly established Supreme Court law does not support Petitioner's claim, and, in any event, there was sufficient evidence of premeditation and deliberation so as to warrant submitting the first-degree murder charge to the jury. Accordingly, Petitioner is not entitled to relief on this claim.

### B. Jury Request for Transcripts

Petitioner next contends that his right to a fair trial was violated when the trial court refused the jurors' request to review the transcripts of the testimony of McCree, Sparks, Tniesha Green, and Antoinette Jones. The trial court instructed the jury that the transcripts would not be available for another two weeks, and that they should rely on their collective memory.

Petitioner asserts that the trial court violated Michigan Court Rule 6.414(H) in denying the jury's request. A violation of state law, however, cannot form the

basis for granting habeas relief, which must be based on a violation of federal law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). There is no federal constitutional right which requires that a jury be provided with a witness's testimony. *See Bradley v. Birkett*, 192 F. App'x 468, 477 (6th Cir. 2006). Nor does United States Supreme Court precedent require a judge to re-read testimony of witnesses. *See Friday v. Straub*, 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley*, 192 F. App'x at 477; *Spalla v. Foltz*, 615 F. Supp. 224, 233-34 (E.D. Mich. 1985).

Given the lack of Supreme Court rulings on the issue of whether a state trial judge is required to re-read the testimony of witnesses or provide transcripts of their testimony to jurors upon their request, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

## C. Sentencing Guidelines

Petitioner next contends that the judge improperly scored Offense Variable 1 of the Michigan Sentencing Guidelines by considering factors that had not been proven beyond a reasonable doubt nor admitted by Petitioner.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a

cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. App'x. 724, 725 (6th Cir. 2007); *Howard v. White*, 76 Fed. App'x. 52, 53 (6th Cir. 2003); *see also Haskell v. Berghuis*, 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010); *Coy v. Renico*, 414 F. Supp. 2d 744, 780 (E.D. Mich. 2006).

"Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009) (citing *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id*.

Petitioner contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to when scoring the Michigan Sentencing Guidelines.

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S. Ct. 2151, 2155, 186 L. Ed. 2d 314 (2013). *Alleyne* is an extension of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the Supreme

Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum sentence, as opposed to the minimum sentence, must be proven beyond a reasonable doubt to a fact finder. *Alleyne*, 133 S. Ct. at 2157-58.

At the time of Petitioner's conviction and sentence, *Harris* was good law. In addition, *Alleyne* has not been made retroactive to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014). Although the Michigan Supreme Court recently relied on *Alleyne* to hold that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial, *see People v. Lockridge*, 498 Mich. 358 (2015), a federal district court may only grant habeas relief if it finds that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). In addition, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after." *Id.* (citing *Williams v. Taylor*, 529 U.S. at 380). Because the Supreme Court at the time of Petitioner's conviction did not require that facts which increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt—

which is the only part of the Petitioner's sentence that the guidelines control—Petitioner is not entitled to habeas relief on this claim.

### D. Claims Raised on State Collateral Review

Petitioner's remaining claims, his first through his tenth, were exhausted in the state courts during his state collateral review proceeding under Michigan Court Rule 6.501 *et seq*. Respondent contends that these claims are procedurally defaulted because the state courts found that Petitioner failed to show "good cause" and "actual prejudice" for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate cause and prejudice to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If

16

the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." This order is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id*.

The Michigan Court of Appeals denied Petitioner's post-conviction appeal, holding that "the defendant alleges grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and had not established that good cause should be waived. MCR 6.508(D)(3)(a)." *People v. Sanders*, No. 317796 (Mich. Ct. App. January 23, 2014). The Michigan Court of Appeals clearly denied Petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), thus, Petitioner's post-conviction claims are procedurally defaulted. *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007). *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

Petitioner alleges in his tenth claim that ineffective assistance of appellate counsel excuses his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754.

The Supreme Court has subsequently noted that it is still possible to bring an ineffective assistance of appellate counsel claim based on counsel's failure to raise a particular claim on appeal, "but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient

18

performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims raised by Petitioner on state collateral review. Petitioner was represented by an experienced criminal appellate attorney, Jonathan B.D. Simon, who filed a brief which included what now form Petitioner's last three habeas claims. Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising his other claims was deficient or unreasonable.

None of the claims raised by Petitioner in his post-conviction motion were "dead bang winners," or were clearly stronger than the claims that appellate counsel raised in Petitioner's direct appeal. Petitioner first claims that the recordings of his 911 calls were suppressed or destroyed by the police. Petitioner asserts that the recordings would have revealed that he stated during the calls that he was the victim of a robbery and was told by the operator to stay at the scene and wait for police. Petitioner alleges that had the jury heard the recordings they would have heard that he claimed to be the victim of a robbery and that he merely stayed at the scene and waited for the police to arrive as instructed, thus showing that he had peaceful intentions.

Even assuming that Petitioner could show that the tapes were suppressed, however, Petitioner was nevertheless required to show that the suppression was "so serious that there is a reasonable probability that the suppressed evidence would have produced a different result" at trial. *See Strikler v. Greene*, 527 U.S. 263, 281 (1999).

The record shows that while the actual recordings were not produced at trial, records were presented indicating that Petitioner made 911 calls and claimed to have been robbed. (Dkt. 5-14, at 6-49). Accepting Petitioner's allegations as true, the only material information missing from trial is that the operator told Petitioner to stay at the scene and any statements by Petitioner indicating his peaceful intentions to the operator. This information would have potentially undermined part of the prosecutor's argument in support of premeditation and deliberation. It would have tended to negate the theory that Petitioner waited outside the bar for a considerable period of time and all along was planning on attacking the victims.

But the verdict rendered by the jury shows that it did not accept that Petitioner acted with such premeditation because it only found Petitioner guilty of second-degree murder. That is, the jury presumably found that Petitioner drove into the victims not with premeditation and deliberation but rather only when the opportunity presented itself. Thus even if the recordings contained the information Petitioner believes that they do, presenting them would not undermine the jury's finding that he was guilty of second-degree murder. Nothing Petitioner told the 911 operator, and nothing the operator told him, change the fact that he hit the victims

20

with his truck as they stood next to the bus and attempted to engage the bus driver in conversation. There is no reasonable probability, therefore, that the result of the trial would have been more favorable had the recording been presented at trial. This claim is not the "dead-bang winner" Petitioner claims it to be.

Petitioner's second claim asserts that his right to a public trial was violated by exclusion of members of the public from jury selection. The record shows that spectators were cleared from the courtroom and then told they could return after the jury venire was seated. (Dkt. 5-10, at 3). There was no objection. (*Id.*) The right to a public trial is waived if no objection is made. *Peretz v. United States*, 501 U.S. 923, 936 (1991); *Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009). This waived claim was not clearly stronger than the claims raised by appellate counsel.

Petitioner's third claim asserts that his right to confrontation was violated when the medical examiner testified regarding conclusions made in a report not generated by him that the act that killed Green was intentional. Like his previous claim, there was no objection, and any claim of error was therefore waived. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n. 3 (2009).

Moreover, it is clear that any error was harmless. The medical examiner merely testified on cross-examination that he concluded a homicide occurred based, in part, on information provided to him by others. (Dkt. 5-12, at 121-125). The eyewitnesses testified that Petitioner purposely accelerated his truck into the bus and the victims. Petitioner's defense was basically self-defense. The medical examiner's testimony that he relied on statements that were also testified-to at trial

did not increase the evidence in the prosecutor's case. Indeed, it was a fact used by defense counsel to undermine the medical examiner's conclusion. (*Id.* at 123-125). Appellate counsel did not perform deficiently by omitting this claim.

Petitioner's fourth claim asserts that the prosecutor committed misconduct by offering the perjured testimony of Sgt. Keven Hannus and eyewitness McCree. With respect to McCree, Petitioner asserts that his statement to Officer Brooks and the 911 operator and the cell phone records show that he was actually over one block away from the collision site when the accident occurred, and not at the intersection of Larned and Brush, as he testified to at trial.

Petitioner has not shown that McCree's testimony was indisputably false, as required to support a claim of misconduct. *See Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). Brooks' recollection of McCree's statement that he was in front of the bar was rather vague and never developed further at trial. (Dkt. 5-12, at 15). The cell phone records do not indisputably show that McCree was standing in front of the Next Level Bar, as Petitioner asserts. (*See* Petitioner's Appx. XVII). Rather, McCree's trial testimony, as is commonly the case with eyewitnesses to a violent crime, contained minor inconsistencies. Nevertheless, as early as the day following the incident, McCree told police that he was driving at the intersection of Larned and Brush when he witnessed the incident. (*See* Petitioner's Appx. XVIII).

Petitioner also claims that Sgt. Hannus committed perjury by testifying that eyewitnesses told him that Petitioner "circled the block." Again, this matter involves relatively minor inconsistencies in the witnesses' testimony. In any event, even

Petitioner testified that he stayed in the area after he left the bar. Whether he drove a short distance and waited for police to arrive or "circled" is a matter of characterization not prejudicial enough to require appellate counsel to raise the issue. Moreover, because the jury acquitted Petitioner of first-degree murder, the alleged misconduct was harmless. Appellate counsel did not perform deficiently by failing to raise these arguments.

Petitioner's fifth claim asserts that his trial counsel was ineffective for failing to secure the recordings of his 911 calls. Petitioner has provided the Court with transcripts of all the pretrial hearings at which his trial attorneys used their best efforts to secure the recordings. (*See* Exhibits to Dkt. 8). A review of the pretrial proceedings show that counsels' efforts to secure the recordings—including holding multiple pretrial conferences, working directly with the prosecutors, filing a Freedom of Information Act request, and obtaining a subpoena—did not constitute deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). (*See* Exhibits C – G to Dkt. 8). Moreover, as explained above, the failure to obtain the recordings and use them at trial was not prejudicial. Appellate counsel did not perform deficiently by failing to raise this claim.

Petitioner's sixth claim asserts that the trial court's examination of Petitioner during his trial testimony was prejudicial and rendered his trial unfair. The record shows that the trial court briefly questioned Petitioner regarding his photography business and whether he took pictures on the night of the incident. Petitioner's

argument as to why this was prejudicial is too speculative to merit discussion. The claim is frivolous, and appellate counsel did not perform deficiently by omitting it.

Petitioner's seventh claim asserts that his right to be present was violated when the trial court sent a reply to a jury note during deliberations outside his presence. The jury requested the 911 call records and transcripts of the testimony of several witnesses. The record shows that both attorney's waived their appearances in the event the jury requested exhibits during deliberations. (*See* Dkt. 5-17, at 6). The record does not show that Petitioner was not present when the response to the note was given and initialed by the attorneys. (*See* Dkt. 1, Exhibit VIII, at 2). This unpreserved claim is not clearly stronger than the claims raised by appellate counsel during direct appeal, and he was therefore not ineffective for failing to raise it on direct appeal.

Petitioner's eighth claim asserts that the trial court erred by failing to make the jury note and its response to the note part of the trial record, denying him his right to appeal. Although the exchange does not appear in the transcripts, as indicated above, a copy of the responsive note shows that both the prosecutor and defense counsel were aware of the requests, as they initialed the response sent to the jury from the court. (*See* Dkt.1, Exhibit VIII, at 2). Petitioner has failed to show how he was prejudiced by the omission of this information in the transcripts.

Finally, Petitioner's ninth claim asserts that his trial attorney was ineffective for failing to preserve the above claims in the trial court. But as explained, none of the alleged errors were sufficiently prejudicial to merit relief on appeal. Accordingly,

Petitioner cannot demonstrate *Strickland* prejudice, and his appellate counsel was therefore not ineffective for omitting an ineffective assistance of trial counsel claim on these grounds.

Because none of the defaulted claims are "dead bang winners," or were clearly stronger than the claims raised by counsel on appeal, Petitioner has failed to establish cause for his procedural default. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000). When cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See, e.g.*, *Smith v. Murray*, 477 U.S. at 533.

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declines to review petitioner's remaining procedurally defaulted claims. *Id*.

Petitioner is therefore not entitled to relief on his first through ninth claims because they are procedurally barred from review.

### E. Pending Motions

Petitioner has filed motions for an evidentiary hearing (Dkt. 8), to supplement the record (Dkt. 9), and to expand the record. (Dkt. 10). The motions seek to develop support for Petitioner's first and fifth claims regarding the suppression of the recordings of his 911 calls. He wishes to expand the record to determine whether the recordings of the 911 calls might still be retrieved, and to further explore the facts surrounding their suppression.

In deciding whether to grant an evidentiary hearing, discovery, or expansion of the record, a federal court must consider whether it would enable a habeas petitioner to prove the petition's factual allegations, which, if true, would entitle him to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). As discussed above, even if it is assumed that the 911 recordings would reveal that Petitioner was told by the operator to stay at the scene and wait for police to arrive, it would not entitle him to any relief. This information at best would have undermined part of the prosecutor's theory as to premeditation and deliberation.

The jury was aware that Petitioner made several 911 calls, and they acquitted Petitioner of first-degree murder. In so doing, the jury rejected any argument that Petitioner was circling in the area and waiting to strike, or else the jury would have convicted Petitioner of the more serious offense. That is, even accepting Petitioner's representations of what the recordings contain, there is no

reasonable probability that the result of his trial would have been more favorable had they been presented at trial. They would not have altered the evidence presented that while the unarmed victims were crossing the street and talking to the bus driver, Petitioner suddenly accelerated his truck into both men. The evidence showed that Petitioner struck the bus with enough force to send the driver flying, and Petitioner dragged one of the victims for more than a block under Petitioner's truck before dislodging the victim on a curb. Based on the evidence presented at trial, even had the 911 recordings shown that Petitioner was instructed to stay in the area, the remaining evidence was sufficient to permit the jury to find him guilty of second-degree murder.  Given that the jury ultimately convicted Petitioner of second-degree murder, he has failed to show that there is any reasonable probability that presenting the evidence Petitioner seeks would have altered the outcome of the trial.

For these reasons, Petitioner's pending motions are denied because even if Petitioner's factual allegations are proven to be true, he still would not be entitled to habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner,

or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate whether the petition should have been resolved in a different manner. The Court therefore denies a certificate of appealability. The Court, however, grants permission to appeal in forma pauperis because an appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.  CONCLUSION

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's pending motions, 3) **DENIES** a certificate of appealability, and 4) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated:  September 27, 2016                  s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 27, 2016, using the CM/ECF system; a copy of this Order was also mailed to the Michigan Reformatory, 1342 W. Main St., Ionia, Michigan, 48846 directed to Petitioner's attention.

                                            s/A. Chubb
                                            Case Manager